## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement and Release of All Claims ("Agreement") is made and entered into on August 14, 2020 by and between Jamie J. Randolph ("Randolph") and The Intersect Group, LLC ("TIG").

## RECITALS

WHEREAS, on July 6, 2020, Randolph brought suit against TIG in the United States District Court for the Northern District of Georgia ("the Court") in a matter styled *James J. Randolph v, The Intersect Group,* LLC, Civil Action No. 1:20-cv-02826-SCJ (hereinafter referred to as "the Lawsuit");

WHEREAS, Randolph alleges that TIG violated the Fair Labor Standards Act ("FLSA");

WHEREAS, TIG disputes and denies these allegations in their entirety;

WHEREAS, a *bona fide* dispute exists between the Parties as to these allegations;

WHEREAS, the Parties wish to resolve all of their disputes, settle these matters, and avoid the uncertainty of litigation;

NOW THEREFORE, in consideration of material covenants and promises contained in this Agreement, the Parties agree as follows:

1.      **Necessity of Court Approval of Agreement.** The Parties shall jointly seek the approval of the United States District Court for the Northern District of Georgia ("District Court") of the terms of settlement described herein. The Parties shall request that the Court shall retain jurisdiction of the Lawsuit to enforce the terms of the settlement. This Agreement shall be executed by all Parties prior to its submission to the District Court. However, this Agreement shall not become effective until the date on which the District Court grants the Parties' Joint Motion to approve this Agreement (the "Effective Date"). Should the District Court not approve this Agreement in its entirety for any reason, this Agreement shall be deemed null and void, and shall have no effect whatsoever, notwithstanding the Parties' execution of the same.

2.     **Consideration.** TIG agrees to pay the total sum of Seven Thousand Five Hundred Dollars and No Cents ($7,500.00) in consideration for Randolph's compliance with his obligations under this Agreement (the "Settlement Payment") no later than ten (10) days after Court approval of this settlement. The consideration shall be paid as follows:

(i)     $1,400.00, minus deductions for payroll taxes, to Randolph as backpay for which TIG shall issue to Randolph an IRS Form W-2;

(ii)    $1,050.00 to Randolph without deductions as liquidated damages for which TIG shall issue to Randolph an IRS Form 1099 designating such amount as Box 3 non-wage income; and

(iii)   $5,050.00 to Kevin D. Fitzpatrick, Jr., Randolph's counsel, for all attorney's fees and costs of every kind for which TIG shall issue to Fitzpatrick an IRS Form 1099 designating such amount as attorneys' fees.

Randolph and his attorneys shall be solely responsible for any tax liability, penalties, and interest arising from the payments provided for in this Agreement. Randolph and his counsel understand and agree that they have not relied on any express or implied representations by TIG concerning the tax implications of the Settlement Payment. Randolph and his counsel acknowledge and agree that if any taxing authority challenges the Settlement Payment in any way, or Randolph and/or his counsel's tax treatment thereof, and seeks any additional taxes or penalties, Randolph and his counsel shall solely be responsible for any such additional taxes and will fully indemnify TIG and any Releasees for actual costs, attorneys' fees, expenses, and/or judgment that it might suffer as a consequence of any action brought by any taxing authority relating to Randolph's and/or his counsel's tax payments or other issues caused by Randolph and his counsel.

Randolph agrees that the consideration provided in this Agreement fully compensates him for all purposes and that this Agreement completely and fully resolves any and all dispute over wages paid to Randolph for any and all work performed arising out of his employment with TIG. Randolph further agrees that neither he nor his attorneys are due or will make any further claim against TIG for any additional compensation, attorney's fees, costs, or damages of any kind arising out of this *bona fide* dispute.

Randolph shall not be entitled to receive, and TIG shall not be obligated to provide, the Settlement Payment until ten (10) business days after all of the following have occurred: (i) Randolph has executed this Agreement; (ii) Randolph

has returned an executed original of this Agreement to counsel for TIG (Warren R. Hall Jr. at the law firm of Hall, Gilligan, Roberts & Shanlever, LLP, 3340 Peachtree Road, N.E., Suite 1900, Atlanta, Georgia 30326, whall@hgrslaw.com); (iii) Randolph and his counsel have provided completed W-9 forms to counsel for TIG; and (iv) the terms of this Agreement have been approved by the Court.

**3.    Dismissal of Lawsuit.**  Randolph and his counsel will prepare and forward to TIG's counsel a Joint Stipulation of Dismissal With Prejudice, signed by Randolph's counsel, within eight (8) calendar days of receipt of all consideration due under Paragraph 2, above.

**4.    Full and Complete Release.**  In consideration for this Agreement, Randolph, for himself, his successors, and assigns, hereby settles, waives, releases and discharges all claims whatsoever against TIG and the Releasees (defined in paragraph 5 below) with respect to each and every claim, cause of action, right, liability or demand of any kind or nature known and unknown at this time that Randolph may have or may have had which arose at any time and which may arise at any time until this Agreement is duly executed.  The claims that Randolph is releasing include by way of example, but not limitation, all claims:

a.    arising from Randolph's employment and/or alleged employment with TIG;

b.    based on discrimination, retaliation or harassment on the basis of age, disability or any legally-protected characteristic or status under the Civil Rights Act of 1866, the ADEA (as amended), Title VII of the Civil Rights Act of 1964 (as amended), Section 1981, the Equal Pay Act, the Employee Retirement and Income Security Act of 1974 (as amended), the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973 (as amended), the Family and Medical Leave Act (as amended), the National Labor Relations Act, the Employee Retirement Income Security Act of 1974, the Older Worker Benefit Protection Act, or any other federal, state, or local anti-discrimination laws or common laws relating to discrimination in employment or otherwise regulating the employment relationship, or affecting the health or safety of employees in the workplace;

c.    based on any oral, written, or implied contract, tort, promissory estoppel, or public policy; and

d.    based on the Fair Labor Standards Act (as amended) or otherwise relating to any wages, pay, overtime, compensation, penalties, attorneys' fees, interest and/or costs.

3

Randolph further agrees not to sue or to authorize anyone else to file a lawsuit on his behalf against Releasees on any claims released in this Agreement. Randolph further agrees to opt out of any class action and not to become a member of any collective action against any Releasee asserting any claim released in this Agreement.

Randolph will not engage in or assist in any litigation against Releasees, except as compelled by order of a court or as necessary to participate in an investigation or proceeding conducted by the EEOC or other governmental agency. This Agreement does not prevent Randolph from filing a charge with, or participating in, an investigation or proceeding conducted by the EEOC. However, if the EEOC or any other state, federal or local government entity begins an investigation or issues a complain on Randolph's behalf, Randolph specifically waives and releases the right, if any, to recover any monetary or other benefits of any sort or type, including rights to reinstatement of employment. Randolph will inform such agency or commission that Randolph has received full relief for any alleged claims and is not eligible for monetary damages. Randolph waives the right to join or recover in any lawsuit as a party that may be filed by such agency or commission or by any other individual or entity against Releasees and will not attach Randolph as a party against Releasees in any such lawsuits, claims, or charges.

5.     **Release of ADEA Claims. TIG makes the following disclosures to Randolph, and in turn Randolph represents and acknowledges that he has been advised, as follows:**

(a)     **That his signature on this Agreement shall include and constitute a waiver and release of Releasees from all Claims he might have regarding rights arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*, ("ADEA") as of the date he signs this Agreement, but that it does not constitute a waiver or release of rights or claims that might arise under the ADEA after the date he signs this Agreement;**

(b)     **That he is advised to consult his attorney prior to signing this Agreement;**

(c)     **That he has been provided up to 21 days within which to consider whether he should sign this Agreement;**

(d)     **That he may choose to sign and deliver this Agreement to TIG's counsel sooner than at the conclusion of the 21-day period if he**

4

feels that it would be in his interests to do so, even though he has no obligation to do so;

(e)     That he has seven full days following the execution of this Agreement to revoke this Agreement, and that this Agreement shall not become effective or enforceable until that revocation period has expired;

(f)     That revocation of this Agreement should be by written notice addressed to TIG's counsel, Warren R. Hall Jr., at Tower Place 100, Suite 1900, 3340 Peachtree Road NE Atlanta, Georgia 30326; and

(g)     That if Randolph revokes his acceptance of the Agreement within seven days after signing it, as referenced above, TIG shall have no obligation to perform its obligations under the terms of the Agreement; provided however, that for the revocation to be effective, written notice must be actually received by Mr. Hall no later than the close of business on the seventh calendar day after Randolph signs this Agreement.

6.     **Parties Released.**  Randolph acknowledges that this Agreement and the release provisions in paragraphs 3 and 4 above apply to and protect in all respects TIG and its past, current and future parent companies, related companies, subsidiaries, affiliates, successors and assigns, owners, officers, directors, shareholders, member, agents, attorneys, employees, insurers and clients (including, but not limited to, Oldcastle APG, Inc. and CRH Americas, Inc.) (collectively, the "Releasees").

7.     **Modification.**  This Agreement constitutes and contains the entire agreement and understanding between the Parties and supersedes all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof. TIG has made no promises to Randolph other than those contained in this Agreement. This Agreement may not be modified, or any provision waived, except by a signed written agreement of the affected Party. Notwithstanding the foregoing, any confidentiality, non-solicitation and non-competition obligations in other agreements with TIG, or to which Randolph is otherwise subject or bound, shall remain in full force and effect whether or not Randolph executes this Agreement and shall not be superseded by this Agreement but read in conjunction with any similar provisions contained herein for the broadest reading in favor of TIG.  This Agreement may be executed and delivered in counterparts, each of which shall be deemed an original, but all of which together

shall constitute one and the same instrument. Facsimile or the electronic transmission of a signature on this Agreement shall be deemed an original.

**8.    Confidentiality.** In consideration of the Settlement Payment and the promises set forth in this Agreement, and as a further material inducement to TIG to enter into this Agreement, Randolph warrants, covenants, and agrees that he has kept confidential the terms of this settlement, and that he will keep confidential and will not disclose to any other persons or entities the existence, terms, or conditions of this Agreement, except as specifically provided below.

a.    Randolph may disclose the terms of this Agreement only:    (i) as required to obtain Court approval of this settlement; (ii); as ordered by a court of competent jurisdiction or as otherwise required by law; (iii) to Randolph's spouse or to licensed and professional accountants or attorneys to whom disclosure is reasonably necessary for the preparation of tax returns and/or the obtaining of legal advice, provided that Randolph will instruct such persons to keep the existence and terms of this Agreement confidential, such that unauthorized disclosure by such persons shall be deemed disclosure by Randolph in violation of this Agreement; or (iv) within proceedings before a court of competent jurisdiction in an action brought in good faith to enforce this Agreement.  If Randolph is required to disclose this Agreement or its terms pursuant to court order and/or subpoena, he shall notify counsel for TIG, in writing via electronic or overnight mail, within two business days of his receipt of such court order or subpoena, and simultaneously provide counsel for TIG with a copy of such court order or subpoena.  Randolph agrees to waive any objection to TIG's request that the document production or testimony be done *in camera* and under seal.

b.    Notwithstanding the foregoing, and although Randolph waives all claims, complaints, and causes of action and all remedies and relief associated therewith, nothing in this Agreement shall be interpreted to limit or interfere in any way with any Party's ability to confer with legal counsel, to provide truthful testimony pursuant to subpoena or notice of deposition or as otherwise required by law, or to initiate, provide information to, or otherwise to cooperate with any investigation conducted by any federal, state, or local agency for enforcement of laws.

**9.    Non-Disparagement.** Randolph agrees that he shall not make any oral or written statements, including on social media forums, or engage in conduct of any kind that disparages, criticizes, defames, or otherwise casts a negative characterization upon TIG or the other Releasees. Randolph further agrees that he will not direct, encourage, or assist anyone else to do so.  TIG agrees to provide a

neutral employment reference and/or employment verification for Randolph consisting of Randolph's dates of employment and income, provided that Randolph directs any such request to TIG's vendor, The Work Number (www.theworknumber.com or 800-367-5690; Company Name: The Intersect Group; Employer Code: 17040).

**10.    No Re-Hire.**  Randolph understands that, as part of this settlement, he has waived any right or claim to reinstatement and he will not apply to TIG or the other Releasees for employment or to provide services in the future. If Randolph does apply, Releasees will have the unconditional right to refuse his application for employment or to provide services based upon this Agreement.

**11.    Non-Admissions.**  This Agreement does not constitute an admission by TIG or the other Releasees that they have violated any law or statute, and TIG specifically denies any such violation occurred.

**12.    Severability and Waiver.**  The Parties agree that the covenants of this Agreement are severable and that if any single clause or clauses shall be found unenforceable, the entire Agreement shall not fail but shall be construed and enforced without any severed clauses in accordance with the terms of this Agreement. The Parties also agree that any failure by any Party to enforce any right or privilege under this Agreement shall not be deemed to constitute waiver of any rights and privileges contained in this Agreement. The terms of this Agreement are to be construed under the laws of the State of Georgia, without regard to its conflicts of laws provisions.

**13.    Voluntary and Knowing.**  This Agreement is executed voluntarily and without any duress or undue influence on the part or behalf of the Parties.

**14.    Acknowledgment. By signing this Agreement, Randolph acknowledges and warrants that:**

   **a.    Randolph has carefully read and fully understands every provision of this Agreement, including, without limitation, the releases of all claims listed in paragraphs 3 and 4 above and the agreement to file the Stipulation of Dismissal with Prejudice in the Lawsuit referenced in paragraph 2 above;**

   **b.    Randolph is represented by counsel and consulted with counsel before signing this Agreement; and**

      c.    **Randolph accepts this Agreement knowingly and voluntarily, and he was not intimidated, coerced or pressured.**

    **15.**    Randolph represents and warrants that he is fully authorized to execute this Agreement and that he has not assigned, transferred or pledged all or any portion of the claims hereby released.

**RANDOLPH DECLARES THAT HE HAS CAREFULLY READ THIS AGREEMENT, CONSULTED AN ATTORNEY, UNDERSTANDS THIS AGREEMENT, AND EXECUTES THIS AGREEMENT KNOWINGLY AND VOLUNTARILY.**

_____

JAMIE J. RANDOLPH

Date: _____ 8·13·20 _____

**THE INTERSECT GROUP, LLC**

By: _____

Title: _____ CFO _____